IN THE

# SUPREME COURT OF JUDICATURE

OF THE

# STATE OF NEW JERSEY,

## AT JUNE TERM, 1875.

---

### HORATIO G. ARMSTRONG v. THE PENNSYLVANIA RAIL-ROAD COMPANY.

1. It is not *ultra vires* for a canal company, having the right to draw water from a public river for its chartered purpose, to agree to discharge its waste water at a certain point.

2. *Quere.* Whether such agreement can stipulate for a continuance of such supply, notwithstanding that, in the fair judgment of the officers of the company, its convenience, or real interest, requires the cessation of such privilege.

---

Demurrer to second count of declaration. This count stated that the plaintiff was the owner of a paper mill and premises, situate in Trenton, through and over which premises ran a certain stream or water course, known as Petty's run, and which stream, &c., before, &c., had run and flowed, and of right ought to have run and flowed, and still, of right, ought to run and flow "unto the said mill, in great plenty and abundance;" that the defendant was possessed of certain lands and embankments thereon, with a certain water course flowing between the same, known as the feeder of the Dela-

VOL. IX.                    A

ware and Raritan Canal; that in the side of the embankment of said feeder an aperture, outlet, or waste-weir had been placed, "through which large quantities of waste water had flowed, and still, of right, ought to flow, from the water flowing in the said feeder to the channel" of Petty's run aforesaid, &c. The grievance complained of was the stopping up of this aperture by the defendants, it being alleged that there was waste water at the time, which was thereby prevented from flowing down said Petty's run to the plaintiff's mill, &c.

Argued at February Term, 1875, before BEASLEY, CHIEF JUSTICE, and Justices DALRIMPLE and KNAPP.

For the defendant, *E. T. Green.*

For the plaintiff, *Jos. C. Potts.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. But a single question was presented for consideration upon the argument of this demurrer.

It was insisted, that it was a legal impossibility for the plaintiff to have acquired a right to a continuance of the flow of this waste water from the feeder of the canal of the Delaware and Raritan Canal Company, the ground of this position being that such company had not the competency to make such a grant. But I am not prepared to go to that length. It is unquestionable, that a corporation of this character is under great restrictions in a matter of this kind, and it may be that the power of this particular company is more than usually circumscribed. There is, obviously, nothing in the charter of this canal company that seems to favor the idea that it can grant, at its will, or for its profit, any portion of the water it is authorized to draw from the river. The legislative grant to it is, " to supply the said canal with water from the river Delaware, by constructing a feeder," which feeder, as well as the canal itself, is made a

public highway. Such privileges, originating in politic considerations, cannot be either hampered or frittered away by engagements or concessions, but must be retained in the hands of the corporation, to be applied exclusively to the objects for the promotion of which they were bestowed. In this feature, this present case is signally distinguishable from the usual instance of an artificial water course, under the ownership or control of a private proprietor, as such latter interests are subject, in all respects, to the unrestricted will of the owner. The legal discrimination between these two kinds of property is marked, with much clearness, in the important case of *The Proprietors of the Staffordshire, &c., Canal Navigation* v. *The Proprietors of Birmingham Canal Navigations*, reported in *Law Reports*, 1 *H. of L. Appeals, p.* 254. The water from one of these canals had, by reason of the use of its locks in a certain maladjusted fashion, run in considerable quantities into the other, and on the attempt being made to save, by means of an improved apparatus, this unnecessary expenditure of water, this the recipient company resisted, and set up, among other grounds, a claim to the water, by virtue of a grant, which, it was urged, was to be implied from long continued user. But, with reference to this position, the Lord Chancellor, Chelmsford, denied the power of the canal company to make a grant of the use of the water, holding that such an act would have been *ultra vires;* and, in the same case, Lord Cranworth, in view of the public purpose of the corporation, says that the water in the canal " is not a natural, or even artificial, stream, in the sense in which those words are understood in the many cases in which the law relating to flowing water has been considered. The water in this canal is not flowing water. It is water accumulated under the authority of the legislature, in what is, in fact, only a tank or reservoir, which the respondents are bound to economize and use in a particular manner, for the convenience of the public." The justness of this view of the law, on this subject, it would be difficult to controvert, for the principles asserted are nothing more than the familiar

maxim, that a corporate body cannot exercise any right, except such as is given in express terms, or by reasonable intendment, and is incompetent to grant away any power or acquisition which can be of use in the performance of its corporate functions.

But it is obvious that this proposition does not cover the whole of the ground requisite for the support of the present demurrer.    Going beyond the doctrine of the foregoing case, this court is now asked to hold, that a corporation cannot lease or grant, it may be for a short period of time, a part of its property for which it may have no immediate need.    It is here denied that this canal company can utilize its superfluous and waste water.    This seems to be pushing a necessary doctrine to an extreme.    I see no legal obstacle to this canal company, being in need of a place over which to discharge its waste water, agreeing with a land-owner that, in consideration of such privilege, he shall have the use of such water as long as it is consistent with the convenience or well being of the company to let it off at that point.    Whether an agreement can go beyond that, and stipulate for a continuance of such supply, notwithstanding that, in the fair judgment of the officers of the company, its convenience or real interest requires the cessation of such privilege, is a more important, and, it may be, a more difficult question, which it is not necessary to consider until the state of the circumstances is presented to the court.    The claim of the plaintiff is stated in general terms in the count, so that, at this stage of the case, it is impossible to discern whether it rests on the exercise of a supposed right to grant its water at will, or on the more justifiable claim of the ability to grant away, for a reasonable term, its superfluity.

The doctrine that a corporation may incidentally turn to account a part of its property not immediately useful to the chartered enterprise, was put in practice in the case of *Simpson* v. *The Westminster Palace Hotel Company,* 2 *DeGex, Fisher & Jones* 141.    That was a company established to build an hotel, and carry on the hotel business ; and having

put up a building which proved to be excessively capacious, the directors rented a large number of the rooms to the India Board, and the question was whether such renting was not *ultra vires.* The judgment sustained this act of the directors, for the reason that there was no permanent diversion of the building from the purposes of its institution, and this conclusion was affirmed, on appeal, in the House of Lords—8 *H. of L. Cases* 712. On the assumption, therefore, that the canal company, in the present case, has done nothing more than to grant away, temporarily, the use of its waste water to the plaintiff, it is not impossible that a cause of action has arisen for a wrongful violation of such agreement. Whether such a contract can be presumed from the mere fact of a user, however long continued, is not now a subject for consideration, as such a right could, under proper conditions, be granted ; the count which, in its general terms, is broad enough to embrace such cause of action, cannot be successfully demurred to.

The plaintiff must have judgment.